**Jack R. Rice, a Minor, by George Rice, His Father and Next Friend, Plaintiff-Appellee, v. Gulf, Mobile and Ohio Railroad Company, Defendant-Appellant.**

**Gen. No. 50,681.**

First District, First Division.

May 26, 1967.

 ██ 

Winston, Strawn, Smith & Patterson, of Chicago (Gerard E. Grashorn and Edward J. Wendrow, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Jack R. Rice, a minor nine years of age, by George Rice, his father and next friend, filed suit in the Circuit Court of Cook County against the Gulf, Mobile and Ohio Railroad Company and an engineer of one of its work trains. Dewey O. Bates, for damages for personal injuries. The action was submitted to the jury on charges of both negligence and wilful and wanton misconduct. The jury returned a verdict of not guilty as to the engineer. The railroad was found guilty and the damages were assessed at $115,000. The railroad's post-trial motion for judgment notwithstanding the verdict or in the alternative, for a new trial limited to the issue of liability only, was denied. A judgment for $115,000 was entered on the jury's verdict. Only the railroad prosecutes this appeal.

Defendant's railroad tracks run, in general, in a North-South direction through the village of Nilwood, Illinois. Morean Street, also known as Old Route 4 is the main street in Nilwood and runs in an East-West direction.

There are pedestrian concrete crosswalks on both the North and South sides of Morean Street, up to and across defendant's tracks. The crosswalks were about 40 feet from either side of Morean Street. The railroad tracks consisted of a Northbound main and a Southbound main. To the West of the Southbound main, also running in a North-South direction, is a sidetrack, or a business track, which also crosses Morean Street and two dirt roads South of Morean, Chestnut and DuBois streets. This business track serves the Kime Elevator Company, which is located immediately West of the business track. The chute of the Kime Elevator Company stands about 180 feet to the South of the South crosswalk of Morean Street.

There is a switch at the South end of the business track permitting a train on the Southbound main to get on or off the business track. This switch is located 1182 feet South of the center line of Morean Street. The switch is equipped with a derail device which will derail any car that might otherwise roll from the business track and enter the Southbound main.

Sixteen railroad cars which had been delivered by defendant to Nilwood on April 18, 1957, were standing on the business track. There were four cars between the derail and the first crossing (DuBois Street) ; seven or eight cars between DuBois Street and the next crossing (Chestnut Street) ; and the remaining four or five cars between Chestnut and Morean streets. A work train, referred to as No. 1,127, consisting of a diesel engine, a gondola car, a clam shell or derrick-type car, another gondola and two cabooses, was located on the Southbound main track, South of the switch at the juncture of the business track and the Southbound main. This work train was engaged in picking up old rails and supplying new rails in the area.

A passenger train, travelling South was due to pass through Nilwood at approximately 3:19 p. m. Under the

railroad regulations, the work train had to leave the main track ten minutes before the scheduled time of the passenger train. The train crew of the work train consisted of five men: defendant Dewey O. Bates, the engineer; James F. Chestney, the fireman; Leroy Holmes, the conductor; Robert Bull, the head brakeman; and John J. Killoran, the rear brakeman. The crew started to move the work train off the Southbound main track and onto the business track at 2:50 or 3:00 p. m. The procedure was begun by Killoran, the rear brakeman, throwing the derail switch so that the work train could go onto the business track. The two side streets and Morean Street were all open at this time. Bull, the head brakeman, gave the first signal to back up the work train onto the business track and up to the first "cut" of cars. Bates, the engineer, was on the West side of the train. Because of the curvature in the track, he could not see any of the other members of the crew out his window in the engine. Killoran, Bull and Holmes, the conductor, were all on the East side of the train. Chestney, the fireman, was on the East side of the engine. He passed the signals on to Bates. The stop signal was given when the first "cut" of cars was reached. These cars were then coupled to the work train by Killoran. Killoran then walked to the next crossing and again gave the backup signal to Bull and Holmes, who relayed it to Chestney, who informed Bates and the work train backed up to the second "cut" of cars. A stop signal was relayed in the same manner as the backup signal. The second "cut" of cars was coupled to the work train. Killoran then walked to the next crossing, Chestnut Street. Again, a backup signal was relayed and when the work train reached the last "cut" of cars, a stop signal was given and the coupling made.

At this point the engine was still on the main line. Killoran walked down to Morean Street and again gave a backup signal. The purpose at this point was to "shove" some of the 16 railroad cars, which had been sitting on

168

the business track, North of Morean Street, uncouple them, and then pull the train forward to leave the crossing clear for vehicular traffic. Once Killoran reached Morean Street the backup signal was relayed in the manner described. The train backed up 3 or 4 car lengths. Killoran cut off 3 cars North of Morean Street and then gave the signal to move forward. This signal was relayed in the aforedescribed manner. The train then pulled ahead as close as it could to the derail switch. Killoran still continued to give the go ahead signal because the South half of Morean Street and the South crosswalk were still blocked. Killoran and Holmes both admitted that they did not know the capacity of the business track and therefore did not know how many cars would have to be "shoved" North of Morean Street in order to leave the street clear for vehicular traffic. Killoran also admitted that he did not care about the crosswalk and left it blocked. He only wanted to clear the street.

Because Morean Street was blocked, it became necessary to back the train up again and drop 4 or 5 cars North of Morean Street. Bates gave 3 blasts on the train whistle and rang the bell, the signal that he wanted to back up. There is some conflict as to whether the train whistle was sounded or not. Holmes gave Killoran a signal that more cars would have to be "shoved" North of the crossing. Killoran gave the backup signal and this was relayed to Bates. The train began to move back North. The train moved about 10 or 12 feet when Bull shouted: "My God. Look at there."

A "vicious stop" signal was given and the train came to an immediate halt. The plaintiff was just North of the grain elevator and came crawling out on the East side of the tracks from under the train. Bates, Bull, Holmes and Chestney all started running toward the boy. Donald Bacon, a farmer, who had stopped on the East side of the tracks during the movements of the work train, heard

someone hollering for help and upon looking to the South, saw somebody laying beside the track.

A man from town, Mr. Starks, had reached the boy and was calling for an automobile. Bacon drove to where the boy was. Starks put the plaintiff in the truck and they drove off, picked up Mrs. Rice and then drove to a doctor in a neighboring town.

Several witnesses testified for plaintiff that they came to the Morean Street crossing around 3:00 p. m. and were unable to cross because there were train cars blocking the crossing. They all testified that after waiting some time, they drove to a dirt road crossing two blocks to the North and came back to Morean Street on the East side of the tracks. The crossing was still blocked when they came back to Morean Street.

The plaintiff's version of the facts is as follows: April 22, 1957, was a school holiday. Jack R. Rice, who lived East of the tracks, was permitted by his mother to visit a friend, David Bettis, who lived West of the tracks. David was not home, so he went to another friend's house, Doug Pittsford, one block West of the G. M. & O. tracks. Plaintiff and Doug played for a while. Jack had been told by his mother to be home at 3:00 p. m. He started for home at about 5 or 10 minutes before 3:00 p. m. When the plaintiff reached the Morean Street crossing there were railroad cars on the business track blocking the crossing. He went back and sat down in front of the Village Hall located on the South side of Morean Street and just West of the business track. He did not see any trainmen on the West side of the track. After 15 minutes he walked around the Village Hall and behind a shed just to the South. He then walked East toward the tracks and back North to the Morean Street crossing. He testified that there was a seven-foot opening between two cars about three feet South of the pedestrian crosswalk on Morean. He started to walk through it. The railroad cars to his right and South of

170

him started to move and knocked him down. He thought that his feet were run over on the East rail. He testified further that he fell and began to crawl in a Southerly direction between the rails and under the cars. He stopped crawling when the cars stopped moving and then scrambled out on the East side of the track. He was immediately taken to a doctor and then to a hospital in Springfield.

■ Defendant contends that the judgment should be reversed or in the alternative that said judgment be reversed and the cause remanded for a new trial on the issue of liability only. Defendant's first argument is that the verdict and judgment in favor of the engineer also acquits the railroad. We cannot agree with this contention.

Defendant relies on the cases of Devore v. Toledo, Peoria & Western Railroad, 30 Ill App2d 409, 174 NE2d 883 (1961), and Larson v. Hines, 220 Ill App 594, (1921), for the proposition that the jury finding that the engineer was not guilty of negligence acquits the railroad. In Larson the plaintiff was killed when her horse-drawn buggy was trapped between two trains, one on the East-bound track and the other, Westbound. The proximate cause of her death, appearing from the averments in all the counts of the complaint, was only the negligence in running and managing the locomotive engines and trains referred to. Thus, the acquittal of the engineers from negligence absolved the railroad from liability.

In Devore plaintiff was killed when his automobile collided with the defendant's train. The engineer and fireman were named defendants and found not guilty of negligence. The complaint alleged that the defendants, the railroad engineer and fireman, were negligent in failing to ring a bell, failing to blow a whistle and operating a train at excessive speeds. With respect to these charges of negligence, a finding of not guilty as to the employees would absolve the railroad of liability. However, the

171

court went on to consider the verdict against the railroad based on additional charges of negligence. It was only because of plaintiff's contributory negligence that the judgment was reversed.

 In the instant case the situation is similar to Devore. The complaint charged the railroad and the engineer with acts of negligence in operating, maintaining and controlling the locomotive and the train of cars, starting the train when plaintiff was attempting to cross between the cars, not keeping a proper lookout for pedestrians and not ringing a bell or sounding a whistle. In addition the railroad was charged with negligence in obstructing a public highway for a period of time in excess of that allowed by Statute. Furthermore, the proof showed that the conductor, who was not named as a defendant, was the person in charge of the train. The rear brakeman was the one who signalled the defendant engineer to move the train either forward or backward. The conductor took signals from other members of his crew and relayed the signals to the engineer. It is clear from the evidence that the defendant engineer was not the person responsible for control of the train, for keeping a proper lookout for pedestrians, or for obstructing the highway. The jury could and did find other employees of the railroad negligent and the railroad is responsible for their conduct.

 Defendant further contends that the verdict is against the manifest weight of the evidence. This case was well prepared and capably presented to the trial court and jury. The Appellate Court will not substitute its judgment for the judgment of the jury unless the opposite conclusion is clearly evident, plain or indisputable. Jenkins v. Hechtman, 83 Ill App2d 72, 226 NE2d 383.

 We are fully aware of the principle that where a case is submitted to the jury on both wilful and wanton misconduct and negligence, to sustain a general verdict

172

there must be evidence of wilful and wanton misconduct. Barrows v. Midwest Transfer Co., 4 Ill App2d 191, 124 NE2d 20 (1955). Wilful and wanton misconduct has been generally defined as an intentional act which under the circumstances exhibits a reckless disregard for the safety of others. Klatt v. Commonwealth Edison Co., 33 Ill2d 481, 211 NE2d 720 (1965).

■ Considering the evidence in the light most favorable to the plaintiff, (Klatt v. Commonwealth Edison Co., 33 Ill2d 481, 211 NE2d 720 (1965)) we find that Morean Street was the main thoroughfare for both pedestrian and vehicular traffic in Nilwood. Defendant's crew admitted that they were not concerned about leaving the pedestrian crosswalk clear of cars. The work train plus the 16 cars on the track constituted a train over 1,000 feet in length. The crew commenced "shoving" the cars on the business track, no one knowing the capacity of the track. No member of the 5-man crew was sent to the West side of the train to protect persons who might be there, nor was any crew member on the pedestrian crosswalk at Morean Street. Reasonable men might properly find that such actions show wilful and wanton misconduct under the above definition.

The defendant's next contention is that plaintiff's counsel was guilty of misconduct in impeaching defendant's witnesses when he used prior testimony which was not in fact inconsistent. Defendant points to 16 such incidents. On three of these, defendant's objection was sustained, on two the question was withdrawn and on two occasions, no objection was made. We have examined the record with respect to all the other incidents and find that the trial judge was correct in overruling the objection.

Defendant also objects to the method of impeachment of its witness John Vance, an employee of Kime Grain Company. Vance was at the elevator on the day of the

173

accident. He testified that he saw trainmen on the East side of the track. On cross-examination the witness was shown the transcript of testimony of a prior trial of this case, was requested to review it and was then asked:

"Q. And did you at any time at the last trial make any reference to seeing a trainman on the East side of the business track or the service track?

"A. I don't think I did."

On redirect examination the following question was asked:

"Q. Did anybody ask you at the prior trial whether you saw any trainmen on the East side?

"A. No."

Defendant relies on only one Illinois case to sustain his position that this method of impeachment constitutes reversible error. That case is Larranie v. People, 222 Ill 155, 78 NE 50 (1906). In Larranie the court stated that it was improper on cross-examination to ask a witness in a murder trial whether he had related at a coroner's inquest on the homicide the same facts he was stating in his testimony. Unless he was specifically interrogated or was directed, invited or given an opportunity at the inquest to so testify, it was improper to so cross-examine. This error when taken in connection with improper comments in closing argument was held to constitute reversible error.

██ ██ However, in Ritzman v. People, 110 Ill 362 (1884), the court stated at p 371:

> "We think, where a witness, on a second examination, as to a particular transaction, states an important fact omitted in his previous account of the matter, his attention, on cross-examination, may properly be called to the fact, and he be required to explain why the omission was made in his first statement. If, in such case, the fact in question was

174

forgotten, or omitted through inadvertence, and the attention of the witness was not directed to it, as it often happens, the witness, of course, would so state, and that would end the matter. But if the discrepancy was intentional, the cross-examination, as a general rule, would develop the fact, and in such case it would, and properly should, affect the witness' credit before the jury."

This is precisely what occurred in the instant case.

■ In People v. Bonham, 348 Ill 575, 181 NE 422 (1932), decided after the Larranie case, the court was reviewing a situation where the defense attorney was using testimony at a coroner's inquest to impeach a witness. The court concluded that "it was quite proper for the attorney for defendant to ask the witness why he had not mentioned in his testimony at the coroner's inquest the fact that his attention was particularly called to defendant by his blowing smoke in the witnesses' face." (At p 591.) We find no error in the cross-examination of Vance.

■ The next point raised by defendant is error in permitting plaintiff's counsel to read on rebuttal a rule of defendant railroad. The rule concerned procedures when crossing siding yards and before "shoving" cars. There is no question but that this was highly relevant to the issues in the case. The trial judge properly overruled objection to the rebuttal.

We now come to defendant's argument, that error was committed in instructing the jury. Bitterly attacking plaintiff as a perjurer and playing "fast and loose with the truth," defendant attacks the issues instruction submitted by plaintiff and given by the court. Plaintiff's complaint alleged that State Highway #4 (Morean Street) was blocked by "a long train of cars extending to the north and to the south of the said State Highway #4.

. . . (and) plaintiff, in attempting to cross between the cars, was then and there injured."

The key portion of the issues instruction, which followed IPI 20.01.01, to which defendant objected stated:

"Plaintiff claims that at the time in question the defendant railroad caused State Highway 4 and the area to the north and to the south thereof to be blocked because of railroad cars, and that while attempting to cross between standing cars, in the exercise of that degree of care of a minor of his age, intelligence, experience and capacity, he sustained injuries."

The portion of the instruction dealing with Count 2, wilful and wanton, was exactly the same except for the phrase dealing with the exercise of care.

Of the five instructions which defendant claims in his brief were erroneously refused, three reflect directly on the issues instruction. Defendant's instructions all required plaintiff to prove that the accident "happened at about the Morean Street crossing," and if the jury were to find that the accident did not happen at that place, they should find for the defendant. We do not feel that plaintiff was under any such burden.

 The thrust of defendant's argument is that plaintiff was not injured at the Morean Street crosswalk, but instead near the Kime Elevator Company, 180 feet South of the crosswalk. Thus, argues defendant, plaintiff was a trespasser and could recover only if defendant was guilty of wilful and wanton misconduct. As already discussed, we disagree with defendant as to the presence of evidence upon which reasonable men might conclude that the railroad was guilty of such conduct. Consequently, limiting the issues upon which a recovery could be based only to an attempt to cross at the Morean Street crosswalk was incorrect, and the trial judge properly refused defendant's tendered instructions.

Defendant also submitted an instruction that stated "if you find . . . that plaintiff attempted to cross the tracks opposite the Kime elevator it would be your duty to return a verdict for the defendants." This again is based on the false assumption that there is no evidence of wilful and wanton misconduct. This reasoning also applies to defendant's allegation of error in instructing the jury as to the definition of wilful and wanton misconduct and that contributory negligence is no defense if such conduct occurred.

■■ Error is also asserted with respect to the IPI instruction given on the effect of a statute. Defendant tendered a non-IPI instruction which said that if plaintiff was attempting to cross at Morean Street, you cannot find for him if the railroad unlawfully obstructed the crossing after the accident occurred. Defendant contended that the crosswalk was not blocked for ten minutes before the accident occurred. This was contradicted by various persons, including plaintiff who said he waited 15 minutes before attempting to cross the tracks. This issue was properly submitted to the jury. In addition, the IPI instruction given, clearly states that evidence of violation of the statute is to be considered "in determining whether or not a party was negligent before and at the time of the occurrence."

■■ ■■ The final error asserted by defendant was the trial court's refusal to give a special interrogatory. The interrogatory submitted asked the jury if the plaintiff attempted to cross the tracks opposite the Kime Elevator Company. Special interrogatories are provided for in the Civil Practice Act, Ill Rev Stats c 110, § 65 (1965). However, a special interrogatory should not be submitted unless a finding on that fact would be inconsistent with the general verdict. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717 (1957). An affirmative answer by the jury to the proposed question would not have been inconsistent with the general verdict.

We have already stated that there was sufficient evidence of wilful and wanton misconduct to sustain the jury's verdict. Consequently, even if plaintiff was attempting to cross the tracks opposite the Kime Elevator Company, there was liability. Defendant's interrogatory sought to establish only an evidentiary fact which is improper use of special interrogatories. Sphatt v. Tulley, 38 Ill App2d 229, 186 NE2d 670 (1963).

We have concluded that there was no error in the trial court, and therefore it is unnecessary for us to consider defendant's request for a remandment on the issue of liability only.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.