NELLIE BAUSBACK, Plaintiff-Appellee, v. K MART CORPORATION, Defendant-Appellant (Heinz Bausback, Plaintiff; Billy Williams *et al.*, Defendants).

Second District No. 2—89—0389

Opinion filed February 16, 1990.

Ridge & Lawler, of Waukegan (James S. Tukesbrey, of counsel), for appellant.

James J. DeSanto, of DeSanto & Bonamarte, P.C., of Waukegan (Michael F. Bonamarte III, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, K mart Corporation, appeals from judgments entered on jury verdicts against it and in favor of plaintiff, Nellie Bausback, for $10,000 in compensatory damages and $40,000 in punitive damages upon her complaint charging it with battery, false imprisonment, intentional infliction of emotional distress and wilful and wanton misconduct. The jury found in favor of the individual defendants, who were all K mart employees at the Mundelein store, and against plaintiff Nellie Bausback on her complaint against Billy Williams, the loss prevention manager, for battery and false imprisonment, and her complaint for false imprisonment against defendants Freida Teeter, the personnel manager; David Fisher, a security assistant; and Timothy Scully, co-manager of the store. Plaintiff has not appealed from the judgments in favor of the individual defendants. The jury also found against Heinz Bausback, plaintiff's husband and coplaintiff, on his complaint against K mart and the individual defendants for loss of

consortium, and no appeal was taken from that verdict. K mart's post-trial motion for judgment notwithstanding the verdict or, alternatively, a new trial was denied.

K mart contends the court erred in denying its motion for judgment notwithstanding the verdict or for new trial where: (a) its liability to the plaintiff was premised on the theory of *respondeat superior* and the jury found none of its employees liable for the acts upon which its vicarious liability was based; and (b) evidence of plaintiff's convictions for battery and disorderly conduct arising out of the same incident was improperly excluded.

■■ mart's motion to strike certain portions of the plaintiff's statement of facts and argument is well taken. The portions of plaintiff's statement of facts noted by K mart are either improperly argumentative, unsupported by record references, or misstate the evidence, and a portion of its argument refers to matters which are *dehors* the record. K mart's motion to strike those portions is granted. 113 Ill. 2d Rules 341(e)(6), (e)(7); see also *Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637.

The events which gave rise to the instant cause all occurred during the afternoon hours of Saturday, October 6, 1984, at the K mart store in Mundelein, Illinois. The record shows that since an operation in 1982, plaintiff suffered partial paralysis in her left leg and used a cane to help her walk. When she arrived at the K mart on October 6, she placed her cane on her shopping cart and used the cart for support as she went to get a carton of cigarettes.

According to plaintiff's testimony, when she went to the layaway department to make a $2 payment on a blazer for her daughter, Tracy, she was informed the blazer had been returned to the sales racks due to payments being late. Timothy Scully, the store co-manager, tried to help her find the blazer, and plaintiff called her daughter at one point during this search to check on the color and size. The blazer could not be found, and plaintiff went back to the layaway and got in line with several other customers. Plaintiff testified there had been some yelling and fighting previously but that "the couple" had left, and she didn't pay any attention to it. Then, "all of a sudden, they came after [her]" and were yelling at her saying she was being too loud and was using vulgar language. They wanted her to sign her name on the layaway card and then give her the money, but she told them Tracy would come back and pick out what she wanted and so she refused to sign the card. Plaintiff identified Billy Williams, Timothy Scully and David Fisher as the "they." She told them to "[t]ake the carton of cigarettes. Do what you want with it because I don't

care *** I'm leaving." Plaintiff testified that when she turned around to get her cane and purse, they were gone, and she was suddenly grabbed in the back. They took her out "like an animal" to a room, put her on the ground, tied her hands and feet with belts, hit her in the face, and sat on her back.

According to the testimony of the K mart employees, plaintiff was first observed by Williams and Fisher at the service desk, where she was demanding and insisting in a "very loud and outspoken" manner that she wanted her coat out of layaway. Timothy Scully tried unsuccessfully to help the plaintiff find the coat and apologized to her for having to refuse to take the payment for the layaway since the item was no longer in layaway. The plaintiff remained in a rage, however, stating that the layaway department was to blame and that they had the coat and were keeping it from her. Plaintiff then headed back to the layaway department and got in line.

Fisher stated he warned the two girls in the layaway department that plaintiff was coming back to the department and that they should just be polite and listen to her. He then positioned himself about 10 feet away from the layaway department in an aisle in order to observe the plaintiff. Williams asked Teeter to stand with him in the paint aisle to observe the plaintiff in the layaway department, and Scully joined them. They observed plaintiff screaming loudly about what "dummies" they all were and that none of them knew what was going on and that they were trying to steal the blazer. Scully told plaintiff that they would try to get her another blazer from another store but that it would take two or three days. Plaintiff kept talking louder, and Williams asked her to quiet down. Plaintiff did not quiet down, and Williams said she would have to leave the store or he would call the police.

When Williams motioned to plaintiff to leave the store, plaintiff poked Williams in the chest and grabbed her cane and swung it at Williams, striking him as he blocked the blow and knocked the cane away. Fisher picked up the cane while Williams picked plaintiff up in a "bear hug" hold and, carrying plaintiff, followed Fisher about 70 or 80 feet to the security office. Williams told Fisher to call the police, and Fisher did so after Scully and Teeter also entered the security office. Still holding plaintiff in a bear hug in front of himself, Williams asked her several times to sit down and calm down. When she did sit down, and he felt she seemed to relax, he released his grip on her arms. At that point, Williams testified, plaintiff grabbed her right wrist with her left hand and came straight back with her arm into his groin area causing him to double over. Williams testified that while he

was doubled over, plaintiff gritted her teeth at him and came at him with both hands and her long fingernails. He grabbed her hands, and when she jerked away, he lost his balance and fell down onto the chair, forcing plaintiff over onto the chair beside it. Facing each other, plaintiff and Williams scuffled, and Williams called to Fisher for help. At that point, plaintiff kicked off from the wall with her feet, and Williams and plaintiff both fell to the floor. At Williams' direction, Fisher took off his belt and secured plaintiff's hands behind her back, and Williams stood up, holding plaintiff. According to Scully, plaintiff then "snarled" at him, stating repeatedly, "You're going to pay for this" and "You'll be the first." Plaintiff then kicked out hard at Scully, striking him below the groin and to the side. The force of the kick caused Williams to lose his balance, and he and the plaintiff fell to the floor again. Plaintiff continued to kick and holler and swear while on the floor, and Williams told Teeter to take his belt off him and tie plaintiff's feet together, which Teeter did. They then sat plaintiff up in a chair. Scully stated the plaintiff seemed to have calmed down, and he said to take the belt off her legs. This was done, and the police arrived shortly thereafter.

There was testimony that K mart had no policy concerning or a training program for dealing with customers who are making a disturbance or are unruly whereas it does have set policies with regard to shoplifters. There was no evidence that plaintiff was suspected of shoplifting. Williams denied he told the plaintiff she could not leave the security office until she signed a general release form or that he sat on her. According to the K mart employees' testimony, plaintiff did not seem to be suffering from any disability on October 6.

Darlene Saam, a store customer who was present along with her two-year-old son in the layaway department when the incident occurred, testified she heard the plaintiff screaming and yelling and saw her swing her cane back and forth. Saam's first thought was that the plaintiff was inebriated. She testified that the K mart employees who approached the plaintiff talked to her calmly and quietly and did nothing to provoke her. She saw plaintiff raise her cane and saw it intercepted by the man who put the plaintiff in a "bear hug."

Mundelein police officer Cimaglio testified he was dispatched to K mart about 5:18 p.m. on October 6. Plaintiff was sitting calmly in a chair; she was pale and had dark circles under her eyes. He did not notice any bumps, bruises, contusions or bleeding on the plaintiff. She was happy-go-lucky and laughing when she arrived at the police station. At no time did she claim to have been beaten, tied or mistreated by K mart.

Mundelein patrolman Roy McCommons, whom plaintiff's counsel encountered by chance in the courthouse, was called in rebuttal. He testified he arrived at K mart about the same time as Officer Cimaglio. To the best of his recollection, plaintiff was bound hand and foot and on the floor when he arrived. McCommons testified plaintiff had a noticeable limp of her left leg when he walked with her that day.

Plaintiff submitted into evidence several photos of herself taken the next day, October 7, which depicted a bruise on her upper left arm, a damaged dental plate and a swollen, discolored left eye. Plaintiff's husband, Heinz Bausback, testified plaintiff was a happy-go-lucky person before the incident. About 9:30 p.m. on October 6, he got a call from her to pick her up at Condell Hospital. He testified he didn't "see so much" about her physical condition at the hospital until he brought her home, and then he noticed "bruises all over the place, and starting on her face and started puffing out on the eye." The next morning her eye was black and blue and the bruises were yellow and black and blue. One tooth was knocked out of her dental plate. He testified that since the incident, plaintiff does not go to the store very frequently, she limps more, she is fearful that somebody is after her and she does not sleep well. Plaintiff's daughter, Tracy Ann Matt, corroborated the plaintiff's appearance the morning after the incident, and she stated her mother was very nervous and upset. Matt testified her mother used to be very outgoing and friendly but is much more "withheld" now.

Plaintiff's regular physician, Dr. Gonzales, reviewed the emergency room report from Condell Hospital, where plaintiff was examined on the night of the incident. He testified there was no mention of any dental damage or an examination of her mouth, nor any notation regarding any bleeding, bumps or bruises.

K mart argues it cannot be held liable for the plaintiff's injuries where her causes of action against it were all based on the theory of *respondeat superior* and all the named individual defendant employees were exonerated by the jury of the actions alleged against them. We agree.

■ It is well settled that an employer may be held liable for the negligent, wilful, malicious or criminal acts of its employees where such acts are committed in the course of employment and in furtherance of the business of the employer. (*Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 964; *Rubin v. Yellow Cab Co.* (1987), 154 Ill. App. 3d 336, 338.) The rule has also been established that "[w]hen an action is brought against a master based on the alleged negligent acts of his servant, and no independent wrong is charged on behalf of

the master, his liability is entirely derivative, being founded upon the doctrine of *respondeat superior.*" (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 123-24.) The *Towns* court explained:

"As such, any legal claim against the master must be said to be identical to that which the plaintiff may have asserted against the servant. *The operative facts which comprise the alleged bases for liability of the master are identical to those which would prove the servant liable.* Indeed, if the agency relationship is not in dispute, any act of the servant which renders the master liable also renders the servant liable. A judgment, therefore, adjudicating the master not liable, where a judgment to the contrary could have only resulted from a finding that the servant committed an actionable wrong against the plaintiff, is a judgment in legal effect that the servant is not liable." (Emphasis added.) *Towns,* 73 Ill. 2d at 124.

By the same reasoning, where the servant is exonerated, it necessarily follows that the party for whom he acted, the master, cannot be held liable but must also be exonerated. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 532-33; *Boston v. Lake Shore Mutual Insurance Co.* (1973), 10 Ill. App. 3d 137, 139; *Rogina v. Midwest Flying Service, Inc.* (1945), 325 Ill. App. 588, 592-93.) A corollary to this rule of exoneration is the principle "that if an action against the employer is based on *other than* the exonerated employee's act or omission, it is possible to render a verdict against the employer and, at the same time, free the named employee." (Emphasis added.) *Boston,* 10 Ill. App. 3d at 139. See also *Rice v. Gulf, Mobile & Ohio R.R. Co.* (1967), 84 Ill. App. 2d 163, 171-72.

In support of the court's judgment denying judgment notwithstanding the verdict, the plaintiff relies on *Devore, Bunyan,* and *Rice* in arguing that the exoneration of the individual employees here for false imprisonment and battery (as to Williams) does not serve to exonerate K mart. She notes the allegations of her complaint charged K mart not only with false imprisonment and battery, but also with intentional infliction of emotional distress and wilful and wanton misconduct. Further, as to battery, she contends the actions of any of the employees other than Williams were a sufficient basis for a finding of liability against K mart.

K mart argues in response that it is clear that the employer's liability in *Devore, Bunyan* and *Rice* was based on evidence which showed either conduct of the employer itself or of employees other than the exonerated named employees upon which the employer's liability was sustained. In the instant cause, K mart contends, there was

no evidence of conduct of itself or of any employees other than the named, exonerated employees which would sustain the jury's verdict against it.

We believe K mart has correctly distinguished *Devore, Bunyan* and *Rice* from the instant cause and that the court should have granted its motion for judgment notwithstanding the verdict.

In *Bunyan*, the plaintiff charged the employer and one of its employees, Charles Townsend, with negligence for leaving used cans of nitroglycerine in places of easy access to the public, including near a school. One of the used cans came into the hands of some of the school pupils and it exploded, causing deaths and property damage. The trial court entered a judgment against the employer, but entered a not guilty judgment in favor of Townsend, and no appeal was taken from that latter judgment. On the corporation's appeal, the court affirmed, not because the employer was charged with different theories of recovery, but because the evidence at trial showed that the employer had employees *other than Townsend* whose negligence caused the complained of injury to the plaintiff. (*Bunyan*, 230 Ill. App. at 355-56.) The court noted that under her complaint, plaintiff was at liberty to prove that some agent other than Townsend was also guilty of the negligence charged against the defendant corporation, and it found that she did so.

*Devore* involved a railroad crossing accident where the railroad and an engineer and a fireman were named defendants. The engineer and fireman were alleged to have been negligent in speeding and in failing to ring a bell and blow a whistle. In addition to these same allegations of negligence in the count against the railroad, it was alleged that the railroad was negligent in that it failed (1) to adequately mark and protect the crossing by warning devices and signals, (2) to operate its cars and train by qualified and experienced employees, and (3) to maintain the crossing properly. The jury trial resulted in a judgment against the employer railroad and judgments in favor of the two named employees. No appeal was taken from the judgments in favor of the employees. The railroad appealed, and, although the court found the exoneration of the engineer and fireman for the acts of negligence alleged also exonerated the railroad, its review of the evidence showed the jury could well have found that the railroad was further negligent in failing to protect the crossing with adequate safety devices. (*Devore*, 30 Ill. App. 2d at 414-15.) The court went on to find that the plaintiff was contributorily negligent, however, and that the railroad's motion for judgment notwithstanding the verdict should have been sustained.

*Rice* involved a railroad accident, where the railroad and one of its engineers were named defendants. A negligence verdict against the railroad was upheld even though the engineer was exonerated. The railroad sought reversal because the engineer was exonerated. The court affirmed the verdict, however, because the evidence at trial demonstrated that employees other than the engineer were involved in the incident.

> "[T]he proof showed that the conductor, who was not named as a defendant, was the person in charge of the train. \*\*\* It is clear from the evidence that the defendant engineer was not the person responsible for control of the train, for keeping a proper lookout for pedestrians, or for obstructing the highway. The jury could and did find other employees of the railroad negligent and the railroad is responsible for their conduct."

*Rice*, 84 Ill. App. 2d at 172.

In the case at bar, count I against K mart for battery alleged that while the plaintiff was in the store on October 6, 1984, "defendant, the CORPORATION, by its officers, agents and employees, unlawfully struck, battered and assaulted the plaintiff." Count II against K mart for false imprisonment alleged that at approximately 4:30 p.m. on October 6 "the defendant, CORPORATION, through its agents and employees with force and in the presence and in view of many persons, pulled, dragged, carried and otherwise took the plaintiff through various aisles in the store to a closed room in the rear of the store and there, forcibly, maliciously, and unlawfully held and tied the plaintiff against her will and \*\*\* that the defendant, CORPORATION, through its officers, agents and employees, tethered the plaintiff, sat upon her and otherwise deprived her of her liberty, all against her will."

Count III against K mart for intentional infliction of emotional distress alleged that on October 6 about 4:30 p.m., "[plaintiff] was advised by the store's manager that her lay-a-way item was returned to stock because she had missed making payments. She was told she could not argue about the situation with the manager of lay-a-way. She was threatened by the security agent with criminal arrest. Her walking cane was forcibly taken from her. She was dragged and carried to the security office in the full view of numerous persons. She was tied with a belt and sat upon in the security office. She demanded that she be released. She was told that she could not leave the store until she signed a release of liability against the defendant, CORPORATION. She demanded that the police be called throughout the time she was detained, but the security agent refused to call the police until the plaintiff signed a release. As she struggled to be free of her

bonds, she was beaten about her face and arms."

Count IV against K mart for wilful and wanton misconduct alleged that on October 6 about 4:30 p.m. "various officers, agents and employees of the defendant, CORPORATION, in wanton and wilful disregard of the rights and safety of the plaintiff, forcibly and against her will removed her from the retail and public area of the store and brought her to a security room. Thereupon, the officers, agents and employees of the defendant, CORPORATION, attempted to coerce the plaintiff to sign a release against liability for their conduct; they bound and tied her to a chair; they took her cane away from her to prevent her from walking; they struck her."

Count VI against Billy Williams for battery alleged that on October 6, he "unlawfully struck, battered and assaulted the plaintiff causing her harm and injury as hereinafter set forth." Count VII alleged that on October 6 at approximately 4:30 to 5:15, "the defendant, FREIDA TEETER, assisted and facilitated co-defendants, K-MART CORPORATION, BILLY WILLIAMS, DAVID FISHER and TIMOTHY J. SCULLY, in their efforts to confine the plaintiff against her will within the K-mart store *** physically and directly tied the plaintiff's legs forcibly, maliciously, and unlawfully, with a belt belonging to one of the co-defendants *** [and thereby] deprived *** the plaintiff, NELLIE BAUSBACK, of her liberty all against her will."

Count VIII alleged that on the same date and time as above "the defendant, DAVID FISHER, assisted and facilitated co-defendants, K-MART CORPORATION, BILLY WILLIAMS, FREIDA TEETER and TIMOTHY J. SCULLY, in their efforts to confine the plaintiff against her will within a K-Mart store *** physically and directly tied the plaintiff's hands behind her back forcibly, maliciously and unlawfully, with a belt belonging to one of the co-defendants *** [and thereby] deprived the plaintiff, NELLIE BAUSBACK, of her liberty all against her will."

Count IX alleged that at the same time and date as above "the defendant, TIMOTHY J. SCULLY, assisted and facilitated co-defendants, K-MART CORPORATION, BILLY WILLIAMS, FREIDA TEETER, and DAVID FISHER, in their efforts to confine the plaintiff against her will within the K-Mart store *** assisted in physically and directly tying the plaintiff's hands behind her back and her legs forcibly, maliciously and unlawfully, with a belt belonging to one of the co-defendants *** [and thereby] deprived the plaintiff, NELLIE BAUSBACK, of her liberty, all against her will."

Count XI alleged that on October 6 "the defendant, BILLY WILLIAMS, assisted by co-defendants, K-MART CORPORATION,

FREIDA TEETER, DAVID FISHER and TIM SCULLY, restrained and detained the plaintiff against her will by forcibly dragging and carrying her to a security office, whereupon he, or at his direction, physically and forcibly tied and tethered the plaintiff's hands and feet with belts *** [and in so doing] deprived the plaintiff of her liberty and freedom against her will."

 It is evident from these allegations that the plaintiff's claims of liability against K mart, including those charged only against K mart (wilful and wanton misconduct and intentional infliction of emotional distress), were not based on any independent wrong committed by it. Rather, they were derivative of her claims against the individual employees under the doctrine of *respondeat superior*. The operative facts comprising the alleged bases for K mart's liability are identical to those necessary to prove the individual employees liable. Where those employees have been exonerated by the jury, it necessarily follows that the party for whom the employees acted, the master, cannot be held liable but must also be exonerated. (*Kirk*, 117 Ill. 2d at 532-33; *Boston*, 10 Ill. App. 3d at 139; *Rogina*, 325 Ill. App. at 592-93.) The jury's verdicts in favor of the individual employees must be viewed as findings that the employees either did not commit the acts alleged or that they were privileged in so committing them and, thus, were not liable to the plaintiff for them. The jury's absolution for those acts extends to all manner of other claims plaintiff may have fashioned from such acts, including those formulated under the doctrine of *respondeat superior*. Further, as K mart argues, the plaintiff's complaint did not allege anything about K mart's lack of policies or procedures to train its employees to cope with disruptive behavior by customers like plaintiff. Consequently, that evidence cannot sustain the jury's verdict. "It is a basic principle that the issues in a case are framed by the pleadings and a party may not prevail where the proof does not follow the allegations made therein. [Citations.] '[T]o have evidence without pleading an issue is as fatal as pleading an issue and not supporting it with evidence.' [Citations.]" *Ambroiggio v. Board of Education of School District No. 44* (1981), 101 Ill. App. 3d 187, 190.

 █ The denial of a motion for judgment notwithstanding the verdict made pursuant to section 2—1202 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1202) will be reversed when the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Runimas v. Howe* (1981), 94 Ill. App. 3d 357; *Thorne v. Elmore* (1979), 79 Ill. App. 3d 333.) With the jury's exoneration of the named individual employees, the record is devoid

of evidence of any conduct of the corporation itself or of any other employees not named as defendants which could sustain plaintiff's claims against K mart. Consequently, it may be said no contrary verdict for the plaintiff could ever stand.

We conclude the trial court erred in denying K mart's motion for judgment notwithstanding the verdict. We reverse the trial court's judgment and remand for entry of judgment notwithstanding the verdict in K mart's favor and against the plaintiff, Nellie Bausback.

In light of our disposition of this case it is unnecessary to address K mart's alternate contention that a new trial should have been granted.

K mart's motion to strike certain portions of the plaintiff's statement of facts and argument are granted.

The judgment of the circuit court of Lake County is reversed. The cause is remanded for entry of judgment notwithstanding the verdict in favor of K mart.

Motion to strike granted; judgment is reversed and cause remanded with directions.

DUNN and McLAREN, JJ., concur.