ROSE J. PICONE ET AL. *v.* DONA TALBOTT

[No. 322, September Term, 1975.]

*Decided December 31, 1975.*

---

5. Even the infants through a trustee.

538

The cause was argued before POWERS, MOORE and LOWE, JJ.

*Barry T. Covington,* with whom was *E. Allen Shepherd* on the brief, for appellants.

*Page J. Digman* for appellee.

LOWE, J., delivered the opinion of the Court.

Appellants ask us to review the sufficiency of the evidence upon which a jury of the Circuit Court for Prince George's County returned a verdict against them for malicious prosecution and defamation. They also ask us to find reversible error because the verdict was returned against both appellants equally for compensatory and punitive damages, notwithstanding the fact that the case presented to the jury against appellant Picone was for malicious prosecution only, while that against appellant Hall was for defamation as well as malicious prosecution.

Both torts arose out of the same set of circumstances. Rena A. Hall handled the leasing arrangements of a small office building owned by her mother, Rose J. Picone. In November of 1970, Hall leased the premises to ITS Company by whom the appellee, Dona Talbott, was employed to provide limited tax consultant services to the public. Subsequently, an altercation over rent arose which provoked Hall into affixing several "for rent" signs to the building, which signs were removed by employees of the ITS Company, the lessee. As additional signs were replaced, they were precipitously torn down.

Hall then obtained arrest warrants for two of the officials of the ITS Company after which she once more affixed her signs to the building. She testified that Talbott removed the signs on this occasion causing her to return to the police station where she had a warrant issued for Talbott. There was direct contradiction of testimony as to whether Talbott removed the signs. Talbott explained that they were

removed by the "main office" and not by her. Hall produced testimony of witnesses who claim to have seen Talbott remove them. Whatever may have been the truth, Talbott produced further testimony of a conversation in the presence of another whereupon Hall said to Talbott either "If you touch my signs again I will have you arrested" or "Goddamn you, Dona, if you take down another sign I'm going to swear out a warrant for your arrest." Presumably, the defamation claimed is not the invocation of the wrath of the Almighty, but rather the use of the adverb "again" giving rise to the implication that Talbott had previously removed Hall's signs. This grievous accusation is at the root of Talbott's action for defamation.

Of greater significance were the arrest warrants and their aftermath. While at work with a customer, Talbott was arrested by a uniformed officer and, in front of a considerable crowd of spectators,

> "[t]he police were trying to arrest her and handcuff her and take her in the paddy wagon with them."

The arrest was thus accomplished to the chagrin of a distraught appellee crying and "on the verge of hysterics." She was charged with the wilful and malicious destruction of property in violation of Md. Code, Art. 27, § 111. When she appeared for trial four months later, the State produced no witnesses and she was acquitted.

### Malicious Prosecution

Without belaboring the question of whether the evidence of malicious prosecution was sufficient as to appellant Hall, suffice to say that we concur with the action of the trial judge below in submitting the issue to the jury. The trial for malicious destruction of property initiated by Hall was terminated in appellee's favor; a want of probable cause was inferable from the manner in which it was terminated, *i.e.*, dismissal for lack of prosecuting witnesses. From that want of probable cause (the inference of which was bolstered by affirmative evidence that appellee had not removed

appellants' signs) the jury could have inferred malice. These factors satisfy the requisites of the tort of malicious prosecution as set forth in *Durante v. Braun,* 263 Md. 685, 688; *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 38, and others. Mindful that we must view the evidence and all possible inferences therefrom in a light most favorable to plaintiff's case when reviewing a lower court's denial of a motion for a directed verdict, *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173 and see *Durante, supra,* 263 Md. at 689, we find no merit in appellant's contention that "it was clearly erroneous for the Court not to direct [the malicious prosecution] count out at the close of the Plaintiff's case since the evidence clearly established probable cause [for the arrest]."

No direct issue as to the agency relationship between Hall and Picone is here raised. However, we note in passing that Picone's business relationship with her daughter, to which she herself testified, fulfilled the criteria of principal and agent. Therefore, Picone would not be relieved from liability even if she was unaware that the particular act was to be done by her daughter. Nor would she be exonerated if the injury was due to her daughter's wilful and wanton conduct:

> " 'The question of liability does not depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of the authority conferred by the master.' " *Lewis v. Accelerated Express,* 219 Md. 252, 256.

Appellant Picone offered no evidence legally sufficient to show that Hall was *not* engaged in the course of her employment and therefore not her agent. *Hopkins C. Co. v. Read Drug & C. Co.,* 124 Md. 210.[1]

---

1. Although Lewis and Hopkins are slander cases, the expressions of the law of agency would apply equally in malicious prosecution. For the principle that the burden of showing that Hall was not engaged in the course of her employment, see also Lewis v. Accelerated Express, 219 Md. 252, 256; Jones v. Sherwood Distilling Co., 150 Md. 24, 32; Newton v. Spence, 20 Md. App. 126, 138-139.

Moreover, the deposed testimony of appellee's employer permits a logical inference that Picone knew of the arrest warrants and ratified her daughter's action in procuring them. Mr. Thomas Hefferon testified:

> " 'Okay. I called her up because I was aware there was warrants out for my arrest, my brother's arrest, and Mrs. Talbott's arrest . . . I told her we were going to move out in another eight days or so anyway . . . but for the balance of the income tax season we did not want excessive 'for rent' signs on the building, if she could talk to her daughter about that, keeping the signs down and also have the warrants for our arrest rescinded. She said she would look into it and call me back.' "

He then described the conversation of Picone on the return call:

> " 'She told me that she talked to her daughter *and she fully agreed with her daughter on the warrants, . . . and she definitely would not drop the warrants.*
>
> 'And I asked her again to please drop them. . . .
>
> 'She again said she would not, she would not have her daughter take the warrant, or recall that, *and she agreed 100 percent with her daughter's actions.*' " (Emphasis added).

We think this is sufficient to raise a jury question as to whether or not Picone ratified the acts of her daughter.

> " 'If the prosecution was previously authorized or subsequently ratified, or if within the scope of the servant's or agent's employment, the employer or principal is liable; otherwise he is not.' " *Nance v. Gall,* 187 Md. 656, 671.

Buttressing that evidence of ratification is Picone's own deposed testimony which was introduced against her:

> " 'Question: So if Mrs. Hall brought in people to rent the place and rerented it after Hefferon left, this would be proper for her to do for you?

'Answer: Right.

'Question: And you would not object to her doing that, would you?

'Answer: No, *because she was in charge.*

'Question: And she was in charge for who? For you, was it not?

'Answer: Yes.

. . .

'Question: All right, let me put it in different words. It was all right with you to use whatever procedures she thought necessary?

'Answer: *Right.*

. . .

'Question: Did you reprimand your daughter for making out this warrant after you found out about it?

'Answer: No.

'Question: Do you think she acted properly?

'Answer: In my estimation . . . In my estimation I think she acted properly. She was destroying her property.

. . .

'Question: All right. After you found out and your daughter told you what she did, did you approve of what she did? Yes or no, that's all.

'Answer: I'll give you my answer. Under the circumstances, under the conditions, yes, I would have approved. I approve and I would have done the same thing.' " (Emphasis added).

This testimony itself sufficiently generated a jury issue as to agency, scope of agency and ratification.

## Defamation

We come now to the question of sufficiency of evidence of defamation, a term used generically by appellant to include

libel and slander, all of which were contained in the third count. Whether the written charges made by appellant Hall could be sufficient to support libel, or whether they are absolutely privileged, was a question argued peripherally below and raised and argued here upon appeal. Appellant Hall restricts her contention upon the third count regarding slander to a single issue:

> "The words allegedly uttered by Mrs. Hall did not amount to actionable slander."

The record reveals that the precise words, which were published by being expressed in the hearing of another on a public parking lot, were repeated by the witness to be:

> " 'Well, I heard Mrs. Hall say to Mrs. Talbott, 'Goddamn you, Dona, if you take down another sign I'm going to swear out a warrant for your arrest.' "

We think these words are sufficient to imply that appellee had unlawfully performed the act accused in the past contrary to appellants' contention that the words conveyed a future intent. Parenthetically, we note that contrary to our subsequent admonition in *Cheek v. J.B.G. Properties, Inc.,* 28 Md. App. 29, the trial judge did not decide preliminarily whether the words and behavior of the speaker were actionable *per se* but permitted that question to be decided by the jury. We noted in *Cheek* that the Court of Appeals has held that:

> " ' . . . ordinarily it is the responsibility of the court, when required to do so, to rule as a matter of law (and not the duty of the jury to find as a fact) whether the words and behavior of a speaker are actionable *per se.*' " *Cheek,* 28 Md. App. at 40, citing *American Stores v. Byrd,* 229 Md. 5, 15.

In that case, as in this one,

> " ' . . . inasmuch as there was no objection to the instructions, we need not decide . . . whether the slanderous *per se* character of the alleged

defamatory words and behavior were properly submitted to the jury.' " *Id.* at 40.

Appellants' argue that even if the words allegedly uttered do accuse appellee of a crime, it is not the type of crime this Court considers to be serious enough to make those words actionable *per se.* Had *Cheek* been decided before this appeal, appellant might have sought solace therefrom. That decision notwithstanding, we are at a loss as to why the issue of whether the words were actionable *per se* seems so compelling to appellants. The historic distinction between slander *per se* and slander *per quod* centers upon the need for proof of special damages. In the former, the injurious character of the accusation is a fact of common notoriety, necessarily imparting damages and therefore not requiring proof of special damages. In the latter, the derogatory meaning of the words must be explained by colloquium and special damages must be proved.

In the case at bar, there was sufficient evidence for the jury to find a defamation from the manner, circumstances and surroundings within which the words were spoken and there were special damages proven in the nature of medical bills for treatment of a condition which could have been partially attributable to the slander as well as to the circumstances of prosecution. Since special damages were proven, it is irrelevant whether the words complained of constituted slander *per se* or *per quod.*

More troubling to us is the libel prong of this amalgamated count. Appellee's contention as to libel, as argued below, was that Hall communicated to the magistrate in Prince George's County that the plaintiff had committed the crime with which she was eventually charged, and that this communication, which was put into writing in the form of a warrant, constituted libel.

This contention is shown in count III of the declaration where it is expressed in its totality:

" . . . that said false charges sworn to by the defendants' agent were written down and recorded

in the permanent arrest and criminal records in Prince George's County, Maryland; . . . ."

Appellant Hall argues error was committed when the court failed to grant her motion for a directed verdict as to the third count because "no action will lie for words spoken or written in the course of any judicial proceeding" citing *Di Blasio v. Kolodner*, 233 Md. 512 and Prosser, *The Law of Torts.*[2] *Di Blasio* describes the distinction between absolute and qualified privilege, and explains that an absolute privilege extends to defamatory statements uttered by privileged parties or witnesses. However, its holding extends an absolute privilege to pleadings in a civil suit. Prosser, on the other hand, speaks in generalities and only marginally supports appellants' contention:

> "The immunity extends to every step in the proceeding until final disposition, although it does not cover publications made before commencement or after termination. Conversations preliminary to the proceeding have given some difficulty. Although there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute rather than a qualified immunity." (footnotes omitted), Prosser, *The Law of Torts*, (4th ed.) Chap. 19 at 780-781.

No extended review of the authorities in Maryland, as was done by Judge Sybert in *Kennedy v. Cannon*, 229 Md. 92, seems necessary here. One case, unmentioned there — or by appellant, expressly places Maryland among those whom Prosser describes as holding the "better view." In *Bartlett v. Christhilf*, 69 Md. 219, 224, Judge McSherry provides a classic example of matters absolutely privileged:

" ' . . . Therefore, if a man goes before a justice of

2. The specific page reference provided was unrelated to the subject for which it was cited.

the peace and exhibits articles against the plaintiff containing divers false and scandalous charges concerning him, the plaintiff cannot have an action for a libel in respect of any matter contained in such articles, for the party preferring them 'has pursued the ordinary course of justice in such a case; and if actions should be permitted in such cases, those who have just cause for complaint would not dare to complain, for fear of infinite vexation.' There is a large collection of cases where parties have from time to time attempted to get damages for slanderous and malicious charges contained in affidavits made in the course of a judicial proceeding, but in no one instance has the action been held to be maintainable; but the libeller may be punished, and the abuse repressed by prosecution for perjury, the result of which is to make the libeller infamous if he is convicted.' "

*Christhilf* is unequivocal and provides example after example of privileged writings, all relevant here.

Although appellants are correct in their contention that, under Maryland law, they are immune from liability as to the written allegations in the arrest warrant, we fail to see how they were harmed by the lower court's erroneous ruling as to that issue. The Court of Appeals has ruled that before error is reversible it must be injurious, *State v. Eye, Ear, Etc., Hospital,* 177 Md. 517, 522; *Kasten v. Kasten,* 159 Md. 329, 334; and the burden is on the appellant in all cases to show prejudice as well as error. *Rippon v. Mercantile-Safe Dep.,* 213 Md. 215, 222. Whether the sentence in the declaration espousing the "libel" was clearly demurrable, appellants failed to single out the issue prefatorily. Although argued as a reason for directing a verdict as to the defamation count generally, appellant raised no question that the single phrase relating to libel should be stricken when the judge expressed his inclination to deny the motion for directed verdict for the express reason that he found evidence of *slander* in the statement of Hall that implied

appellee had previously destroyed the signs. The judge made no mention of the libel charge in his instructions [3] nor was it made an issue elsewhere in the record. Since the defamation count was supported by evidence of slander, the single statement of libel in the declaration and the use of the term in conjunction with slander and defamation in the instructions were not prejudicial, although the libel alone was clearly insufficient to support a verdict because of its absolute privilege. It is hoped that the practice of pleading libel and slander in a single defamation count is not prevalent.

## The Verdict

Finally, we arrive at the verdict. Although the malicious prosecution count (Count I) stood as against both appellants, Picone and Hall, the defamation count (Count II) was stricken as to Picone and let stand as to Hall. The jury's verdict failed to recognize a distinction:

> "THE DEPUTY CLERK: Madam Foreman, what say you? Do you find you find your verdict for the plaintiff Dona Talbott, or for the defendants Rena Hall and Rose J. Picone?
>
> THE FOREMAN: On Count 1 and Count 3 for the plaintiff.
>
> THE DEPUTY CLERK: Against which defendant?
>
> THE FOREMAN: Against Mrs. Hall and Mrs. Picone.
>
> THE DEPUTY CLERK: What compensatory damages do you assess?
>
> THE FOREMAN: Five thousand dollars.
>
> THE DEPUTY CLERK: What punitive damages do you assess?
>
> THE FOREMAN: Fifteen thousand dollars."

---

**3.** Although he used the word "libel" along with "slander and defamation" when alluding to Count III throughout the instructions.

Although appellants demanded and received a poll of the jurors, they did not raise either objection or question as to the verdict before the jury was discharged — nor does the record show an issue raised below thereafter. Had the issue been raised, the judge could have returned the jury to its room to declare what, if any, distinction they chose to make between the appellants as to damages. The possibility of a combined verdict did not come as a shock to counsel or to the judge, all of whom expressed confused concern over the damage instructions. After his general instructions, the judge added the following:

> "THE COURT: Members of the jury, as you know we have just gone over exceptions and suggestions for the Court's instructions. But receiving a note from the clerk I may not have made myself clear on one thing. I will give you these additional instructions which are binding upon you which I will repeat.
>
> If you find for the defendants, of course that is the end of the case.
>
> You consider the malicious prosecution in the first count as against both defendants, and you consider the libel and slander and defamation as to the defendant Hall alone. But if you come up with damages, in assessing damages, the counts are consolidated. For instance, if you should find against the defendant Hall alone you would only find one figure of damages as compensatory and if you should allow exemplary or punitive, one figure for that. It would be determined as to whether you will have all of this against the defendant Hall or against both the defendant Hall and defendant Picone. But you are not to come up with separate ones on the count of malicious prosecution and separate ones on the libel and slander and defamation. If the plaintiff sustains the burden as to the first count or as to the third count, damages could be assessed on either or both of those, but not in but one figure."

After considerable discussion at the bench, appellants expressly declined to register an objection to the damage instructions.

"(Whereupon, counsel approached the bench and the following proceedings were had out of hearing of the jury:)

THE COURT: Frankly I think that is as far as I could go. I don't think I ought to get into the area if they decide to hold both of them in they find a different amount against Mrs. Hall or different amount — do you agree?

MR. SHEPHERD: This is confusing.

THE COURT: It is confusing.

MR. DIGMAN: I would merely suggest that perhaps the Court should advise that a verdict, if they find that the plaintiff is entitled to a verdict against both defendants that they must render a verdict individually against both defendants but only in one amount. Even though they may find Mrs. Hall, if they find Mrs. Hall —

THE COURT: If they hold Mrs. Picone in she has to be held in for the full amount. Isn't that the simplest way?

MR. DIGMAN: Yes.

MR. SHEPHERD: I don't think that is proper, though.

The problem is, just as an example, suppose they felt that the defendant Hall acted wrongly and should be punished and at the same time felt that the defendant Picone shouldn't be.

THE COURT: That is on the question of punitive damages.

MR. DIGMAN: I think what Mr. Shepherd is saying is that suppose they hold Mrs. Hall only for both punitive and compensatory, but only on compensatory on behalf of Mrs. Picone they would have to be separate verdicts. Isn't that what you are saying?

MR. SHEPHERD: I would think so. Won't they have to be separated verdicts in that instance? If they felt that Mrs. Picone should not be punished because her conduct wasn't outrageous. That is a hypothetical, but you know they could, it is conceivable that they might think that. They might think that she should be held in for compensatory but they don't think she did anything outrageous.

THE COURT: Which she would have to do to have punitive.

MR. SHEPHERD: Which she would have to do in order to be held legally liable for punitive damages.[4]

THE COURT: I have already told them, I thought, that they can find on the compensatory damages against either or both or one or the other. Both or one of the two on the compensatory, and the same way with the punitive.

MR. SHEPHERD: All right.

THE COURT: They would have to indicate which defendant.

MR. SHEPHERD: *I am willing to let the matter drop at this point. I am not sure it could get cleared up.*

THE COURT: *I would think so. Do you agree?*

MR. DIGMAN: *Yes.*

(Whereupon, counsel returned to the trial tables and the following proceedings were had in open court in the hearing of the jury:)"

We think appellants' waiver reflected a tactical decision to take their chances, because they were at a loss as to what course to follow in recommending an instruction or objecting to that which was given.

The confusion could have been avoided by submitting to

---

4. See Cheek, *supra,* 28 Md. App. at 43-45 re Apportionment of Punitive Damages.

the jury specific issues to which they had to respond and, depending upon their answers, an apportionment of the damages assessed could have been made. Failing that, when the jury rendered its verdict, had the question been raised the court could even then have required an explanation of whether the jury considered all the circumstances surrounding the injury to be a single incident for which both appellants were jointly responsible despite the legal fiction of separate labels for separate acts, or whether they intended that the appellants should bear responsibility disproportionately. Appellants' express assent that the matter was to be dropped without registering an objection or requesting an instruction clearly waives their right to now object. Md. Rule 554 d. When the jury complied with the questionable instruction, appellants' subsequent silence at a time when the defect could have been cured precludes their present complaint.

*Judgment affirmed.*
*Costs to be paid by appellants.*