**Stanley C. MANN, Plaintiff and Appellant,**

v.

**H. Wayne WADSWORTH, Watkiss, & Campbell, and Does 1–10, Defendants and Respondents.**

**No. 870211–CA.**

Court of Appeals of Utah.

June 20, 1989.

Stanley C. Mann, Salt Lake City, pro se.

Ray R. Christensen, Gainer M. Waldbillig, Salt Lake City, for defendants and respondents.

Before BULLOCK,[1] GREENWOOD and NEWEY,[2] JJ.

**J. ROBERT BULLOCK, Judge:**

Plaintiff Stanley C. Mann appeals from a judgment on a verdict dismissing his claim for malicious prosecution against defendant H. Wayne Wadsworth, and from a summary judgment of dismissal as against defendant Watkiss & Campbell. We affirm.

The events leading to Mann's claim began with a dispute over custody of an adopted minor child, David Wheeler. David's adoptive parents were divorced, and he was placed in the custody of his adoptive mother, Mann's niece, who died leaving a will designating Mann and his wife guardians of David. Thereafter, the Manns petitioned for their appointment as David's guardians. However, David's adoptive father, Mark Wheeler, represented by defendant Wadsworth of the law firm of Watkiss & Campbell, contested the Manns' petition, and counterpetitioned for award of the child's custody to him. After an initial temporary award of custody immediately following the death of the child's adoptive mother, permanent custody was awarded to the child's adoptive father, Mark Wheeler, and his wife Sylvi.

Shortly after the initial hearing on the custody question but before the permanent custody award, Mark Wheeler was shot three times in May of 1979 at his home in California. Though critically injured, he survived, but was unable to identify his assailant. His present wife, Sylvi Wheeler, was an eyewitness to the shooting, but was also unable to consciously identify the assailant. However, in a hypnotic interview conducted by police, she identified Mann as being at the scene of the shooting and leaving in the getaway car with the gunman.

1. J. Robert Bullock, Senior Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

2. Robert L. Newey, Senior Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

The Wheelers sued Mann in December of 1979 for conspiring to attack Mark Wheeler and to deprive them of David's custody. Wadsworth and Watkiss & Campbell also represented the Wheelers in that suit, under an agreement for a contingent fee on the condition that Wheelers would bring their obligation for accrued legal fees current. Wadsworth and Watkiss & Campbell later withdrew as counsel, and succeeding counsel voluntarily dismissed the conspiracy suit.

Following the dismissal, the Manns, in separate actions, sued Wadsworth and Watkiss & Campbell for malicious prosecution in bringing the conspiracy suit. In the case at bar, summary judgment of dismissal was granted by the trial court in favor of Watkiss & Campbell, and the case proceeded to trial as against Wadsworth. The jury returned a verdict in favor of Wadsworth, and judgment on the verdict was entered dismissing the case.

■ Before trial, Mann sought to have the trial court judge, John A. Rokich, disqualified because Judge Rokich was once reportedly "of counsel" to Watkiss & Campbell. When Judge Rokich's disqualification was called into question, he followed precisely the requirements of Utah R.Civ.P. 63(b), by referring the question to another judge. Judge Philip R. Fishler, then presiding judge of the Third District Court, denied Mann's motion, noting that Mann had not specified the nature and time of Judge Rokich's averred prior relationship with Watkiss & Campbell. Judge Fishler also found that Mann had demonstrated no actual bias on Judge Rokich's part. Mann offered no supplementary information concerning Judge Rokich's involvement with Watkiss & Campbell.

Had Judge Rokich recently been associated with Watkiss & Campbell as partner, shareholder, officer, or employee, or if he were shown to have had an identified pecuniary interest in Watkiss & Campbell, a party in this suit, his disqualification would clearly have been appropriate. However, as Judge Fishler noted, the nature and time of Judge Rokich's association with Watkiss & Campbell is not clear from the evidence Mann provided. For all that appears, the relationship could have ended so long ago that it is of no present significance. Likewise, there is nothing in the record indicating the nature of the "of counsel" relationship between Judge Rokich and Watkiss & Campbell. The vague term "of counsel," the only descriptor Mann employed, includes in common usage relationships which are merely nominal, ad hoc, or consultative, without substantial pecuniary import or personal affinity.[3] We therefore conclude that Judge Fishler did not err in holding that a sufficient factual basis for disqualifying Judge Rokich was lacking.[4]

■ With regard to the dismissal of Watkiss & Campbell, Mann asserts error in the application of the doctrine of *respondeat superior*. We agree. The trial court dismissed as to Watkiss & Campbell on the grounds that Wadsworth had not been authorized by Watkiss & Campbell to commit an act of malicious prosecution, and therefore, the acts of which Mann had complained was outside the scope of Wadsworth's employment. However, the vicarious liability of an employer does not depend on a finding of express authorization. The scope of employment is determined according to the test set forth in *Birkrener v. Salt Lake County*, 771 P.2d 1053, 1055–60 (Utah 1989), and, as there noted, is generally a factual question. It should therefore have been determined by the jury. However, since Watkiss & Campbell's liability under *respondeat superior* is vicarious, it does not exist apart from Wadsworth's liability. The jury held Wadsworth not liable, and the same result

3. See, *Black's Law Dictionary* 975 (5th ed. 1979); B.A. Garner, *A Dictionary of Modern Legal Usage* 387 (1987).

4. See *Madsen v. Prudential Federal Savings and Loan Assoc*, 767 P.2d 538 (Utah 1988); *State v. Neeley*, 748 P.2d 1091 (Utah 1988).

We also note from our examination of the record that there are no discernible indications of actual bias on Judge Rokich's part, either against Mann or in favor of the defendants. No detrimental effect on rights of the parties appears to have resulted from the fact that Judge Rokich presided at the jury trial.

must, therefore, also obtain for Watkiss & Campbell. The dismissal of Watkiss & Campbell is accordingly harmless error. Utah R.Civ.P. 61; *King v. Fereday,* 739 P.2d 618, 622 (Utah 1987); *Estate of Kesler,* 702 P.2d 86, 96–97 (Utah 1985).

Mann argues that the jury was erroneously instructed on the question of probable cause. However, he admits that he failed to object to the instruction in the lower court. Without a specific objection on the record, and lacking compelling reason to review the instruction, we do not consider the correctness of the instruction for the first time on appeal. *Hansen v. Stewart,* 761 P.2d 14 (Utah 1988); *King v. Fereday,* 739 P.2d at 621; *Penrod v. Carter,* 737 P.2d 199, 200 (Utah 1987); *Morgan v. Quailbrook Condominium Ass'n,* 704 P.2d 573, 579 (Utah 1985); *VanDyke v. Mountain Coin Machine Distributors,* 758 P.2d 962, 964–65 (Utah App.1988).

The other arguments Mann raises are without merit. One of these arguments stressed in the briefs is Mann's assertion that evidence was not made available in timely discovery. However, we do not find a record of any trial court ruling on this question. The problem was reportedly raised at a pretrial conference and additional evidence belatedly provided, but any deficiencies remaining thereafter were not called to the attention of the trial court or made a part of the record. We are therefore not in a position to consider those deficiencies. *See Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 654 (Utah 1988).

The judgments of dismissal are affirmed.

GREENWOOD and NEWEY, JJ., concur.

